The first is BGS v. Garland. Counsel, I'm told, is all here. So with that, Ms. Horne, you've reserved two minutes for rebuttal, I believe. OK, well, the floor is yours. You may proceed. Thank you. Good morning, your honors, and may it please the court. Madeline Horne, representing BGS, who is the petitioner here and was the respondent below. We are asking this court to reverse and remand the Board of Immigration Appeals and the Immigration Judges rulings, as these contain two fundamental legal errors. First, the agency failed to properly assess the persuasiveness of credible testimony from BGS and his supporting witnesses. Second, the agency misapplied this court's ruling in De La Rosa by relying on legally insufficient evidence, as well as its ruling in Garcia Aranda by failing to consider whether prison officials would acquiesce to BGS's torture by gang members. Turning to my first point, your honors, the agency here found that BGS was credible, responsive to questioning, and that his testimony was generally consistent with his written statement. Having made that finding, the agency could not then write off the entirety of BGS's testimony as unpersuasive without providing reasons separate and apart from credibility. This amounts to an adverse credibility ruling under a different name of the type that the BIA warned against in matter of DYL. In Garland v. Ming Dai, the Supreme Court held that the INA expressly distinguishes between credibility, persuasiveness, and the burden of proof. It follows, your honors, that whereas here the immigration judge makes a positive credibility ruling, but an adverse persuasiveness ruling, it is required to explain that persuasiveness ruling separate and apart from factors ordinarily going to credibility. This is consistent with this court's case law, requiring the agency to provide additional explanation where it declines to enter an adverse credibility finding as to whether corroboration is material, necessary, and reasonably available. It is also consistent with the fundamental principle of administrative law as articulated by this court in OJO, that the agency must give a minimum level of analysis as removal is a serious matter that cannot be left to speculation or to judicial guesswork. But what's the speculation or guesswork here? I guess I'm not sure I follow you. It seems like a fairly theoretical argument. So bring it down to the facts as you're arguing them. Sure, your honor. So I'll take the facts from BGS's testimony. So the immigration judge here cited just two factors in discounting the persuasiveness of BGS's entire testimony. One was a statement that was made during his hearing that was not included in his written report. But I guess there are a lot of things that a witness or a petitioner will say at a hearing. And the fact finder might conclude that this is credible. But if it doesn't go to the most important facts relating to torture, then it wouldn't be persuasive, right? You could have credibility findings. Yes, it's credible, but didn't allege or assert facts that are enough to establish what you need to establish for torture. Well, I think, your honor, that would go more towards the burden of proof. What we heard from the Supreme Court in Ming Dai is that on the persuasiveness analysis, the agency needs to look to whether the material fact is outweighed by other testimony in the record. And Justice Gorsuch gave us an example of when that might be the case. He wrote about someone who was testifying as to a traffic accident and says that the light was green. But then there's video evidence introduced showing that the light was red. Right, but again, we're going to be very theoretical. So here, the argument is that your client was a gang member. He has gang tattoos. If he gets returned to Guatemala, he will be imprisoned. And in prison, he will then be subject to violence or worse, death by gangs with the acquiescence of Guatemalan authorities. That's the theory, right? Yes. OK, and so what is the testimony that supports all of that? I mean, you need something that shows not only that he was a gang member, but also that he'll be arrested and detained, and that the conditions in the prison are such that he will be tortured, and that it's done with the acquiescence of the government. So you're saying that your client's testimony did all of that? Yes, Your Honor, and in fact, the immigration judge relied on, in his opinion, the first two facts that you stated. First, that BGS was a member of MS-13 from the age of eight. Right, those are reasonable words. I agree. Right, and second, that he is going to be incarcerated if he is sent back as a result of the outstanding warrant for his arrest that it's included in the record. The IJ found that that warrant exists, and it increases the likelihood that he will be incarcerated. I think the problem here with the persuasiveness finding, Your Honor, is that if we look to the section of the IJ's opinion where he lists all of those factors that you just stated from the testimony, he then proceeds to say that none of these are persuasive. But in the persuasiveness part of the opinion, the agency offered no reason for finding that those facts were not true. And those include, you know. But what facts were not true? Well, that Black Demon issued a green light against BGS, which authorized gang members to execute him on site, that he fled his hometown in fear of his life after that green light was issued, and that MS-13 later attacked him with a machete. The IJ has a paragraph where he lists all of these facts from BGS's testimony, and then states, but because his testimony is not persuasive, I give no weight to any of those facts. The problem is that the actual reasons offered for why BGS was not persuasive did not go to any of those facts. So our argument here, Your Honor, is that the agency needs to consider the key material evidence in the case. And if the agency finds that this evidence is credible, which it did in this case, it needs to provide separate explanations for why that evidence was not persuasive. Could you shift? Unless I don't want to interrupt. No. But I'd like to spend a little time hearing your perspective on the legal standard that the agency applied in evaluating the risk that he faced in prison at the hands of the gang. Sure, Your Honor. Happy to shift to that point. So here we think the problem really is that the agency misapplied Garcia-Aranda on two fronts. So the standard from Garcia-Aranda is that the relevant question is whether any public official will acquiesce to torture committed by gang members. And if the court looks to the relevant sections of the IJ and the BIA's opinions, in essence, what happened here is that the agency forgot who the torturer was. So the relevant paragraph in the BIA especially makes no mention of the fact that if BGS is incarcerated when he returns to Guatemala, he is likely to be tortured by other gang members. Instead, both the BIA and the IJ wholly focused on whether prison officials themselves would torture BGS and equated this to the court's existing prison conditions cases, stating that negligence and a lack of resources or training or education don't amount to a specific intent to torture. We don't disagree with that case law, Your Honors. The problem is that this is not that case. This is a case where BGS will face intentional violent attacks from other gang members. He has visible evidence on his body in the shape of a defaced tattoo that he betrayed the gang. And he will face torture from other inmates. And he'll be in a carceral environment where he's under the supervision of prison officials who have a legal duty to intervene and who are not likely to do so. But the IJ, the BIA actually, did reference specifically gang violence as well as safety and control problems in the prisons of Guatemala, right? Yes, so those general references were made in the BIA's opinion. But the specific two-step analysis that should have been done here was not, Your Honor. So the BIA didn't look to whether prison officials themselves would acquiesce to BGS's torture. And that is what was required below. I see my time has expired, Your Honors. But if the panel has further questions. All right. Well, you've reserved two minutes for rebuttal. Thank you, Ms. Horne. We'll now hear from Ms. Gruff. Am I pronouncing that right? Yes, sir. Thank you. Good morning, Your Honors. And may it please the court. Stephanie Gruff for the Attorney General. Your Honors, this court should deny the petition for review. Specifically here, because the agency properly concluded that the petitioner did not meet his burden of proof to establish that it's more likely than not that he would be tortured if removed to Guatemala. Importantly here, the agency acknowledged that petitioner has mental health concerns. There was evidence in the record. The Department of Homeland Security did not contest this. And the immigration judge specifically held a hearing to hear about his mental health concerns and to determine if there should be any safeguards in place. After this hearing, the immigration judge determined that petitioner was competent to proceed, but determined that safeguards such as not having him fully testify to support his declaration, relying on the declaration, leading questions, et cetera, would go into place. And importantly, noted that petitioner does fear not only being tortured in a prison, but there was potential that he would be placed in a mental health institution. Can I jump in and shift to the conversation we were having with your counterpart towards the end, which has to do with the legal framework for evaluating this prison issue? Yes. And I'll tell you what I'm concerned about, and I'm hoping you'll be able to answer my concerns. There's a body of law that deals with crummy prison conditions. And it basically says that goes to, that's not the government torturing somebody. That goes to negligence and lack of resources. There's a separate framework for evaluating claims that somebody is going to be tortured by a private actor, a third party, and it's government acquiescence that brings that within the scope of the CAD. And it's a different set of tests that we apply there. We look and see what's the legal obligation of the government to protect and is the government willing or unable to fulfill that obligation. It seems as though the IJ applied the crummy prison conditions case law and never dealt with the private third party. The BIA mentions gangs, but throws it in there with crummy prison conditions and never applies the framework. Why isn't that legal error that would at least require remand for the agency to apply the right standard? Well, Your Honor, the government understands your concerns. However, I would respectfully disagree. For CAT protection, there are two important inquiries. First, is there the likelihood of harm, which the immigration judge here, and then whether it's by or with the acquiescence of a public official. In concerns related to the gang violence, the immigration judge here went through petitioner's claim that the gangs will harm him amongst his other claims and found that the record did not establish that it's more likely than not that he would be sought out for these gangs. Then turning to the acquiescence finding or a public official finding, which importantly to note, the more likely than not of harm is dispositive, the immigration judge here acknowledged that there is a warrant for his arrest. So there is some likelihood, as my counterpart says, that he may be in prison. And the immigration judge also noted that he is afraid of being placed in a mental health institution. And through that, the immigration judge acknowledged and brought in two separate parts. Noted the conditions in both the mental health institution and with prison conditions and said that the government overall is not willfully blind to this. That acquiescence, that willfully blind language is directly to the acquiescence. And the judge was addressing that in both the context of. I'm going to push back a little bit. The willfully blind had to do with the conditions of confinement in those two settings. And the analysis about the likelihood of the gang seeking him out was in the context of discussing his fear that out in the world, once he returns, that they would look him up to try to find him and go after him, which is a very different. In the context of testimony, it's not just his testimony. We have contrary conditions. We have expert testimony saying that he is likely to go to prison, that the prisons are largely controlled by gangs, that the tattoo and the cover up of that tattoo to make him a huge target. And then we had his own testimony that they greenlighted and they actually tried to. They came after me with a machete. I don't see the analysis of that as a risk of torture from a third party with government acquiescence as opposed to conditions of the prison. Well, Your Honor, multiple parts. Importantly, not to get into the first part, but while Petitioner did testify credibly, the judge found him unpersuasive. So that's an important thing to keep in mind. What does that mean? The credibility and the unpersuasive thing always confuses me. And then you throw in corroboration. If they're credible, it means I believe what you're telling me. If it's unpersuasive, it means even though I believe everything you've told me, it doesn't satisfy the burden that you have to establish, right? Well, to clarify, the Supreme Court reiterated the standard in Ming Dai and stated that not only does a non-citizen need to establish credible testimony, it needs to be persuasive and that it needs to specifically identify facts to meet the burden of proof. There were three separate factors. And importantly, in Ming Dai, it said one can be credible, believe what they say, but an immigration judge does not need to find that that automatically means it's persuasive. And then if it is not persuasive, that is where corroboration goes into place to establish. So help me understand this, because this is something I should, I mean, we deal with it all the time, and I still am struggling. When you say it's not persuasive, does that mean it's credible, but I'm still not going to treat it as true? Or does it mean it's credible, but that fact doesn't establish the necessary element that you have to establish, so you're going to need to give me more? It is the latter, Your Honor. And my colleague mentioned the red light example, which I do think in Ming Dai is illustrative of what persuasive and credibility means. Someone who testifies that they were hit by someone else, that that other person ran through the red light, but later on, someone else, and there's other evidence that it was that person that ran through the red light. The immigration judge, in this hypothetical example, can find that while the non-citizen believes what they're saying and testifying credibly, there's no indication that they're maybe lying, that it's not persuasive in looking at the record as a whole. And here, that's exactly what they did. But I do want to set the record straight. That seems strange to me, that credibility means not lying. There are a lot of people who are not lying, but they're not credible, because either they have mental health problems, or because they just didn't observe something. You're suggesting that credibility is simply a finding of non-perjury? No, Your Honor. The Supreme Court specifically noted that in that situation, someone may not be lying. That's not to say that if someone is credible, that they are never lying. In fact, it's more of a worthy of belief. I was just about to say that, Your Honor. It's more the worthy of belief. But it seems odd, I guess, to follow up on what Judge Robinson is saying, to say you're worthy of belief, but I don't believe you. Well, again, here, there were significant concerns with petitioner's mental state and mental health. That's not something that a petitioner focuses on here, but it is important. The immigration judge here went above and beyond to implement safeguards, to hear testimony from witnesses, to ask petitioner questions, and ultimately found that he did not meet his burden of proof. And that's very important here. The standard of review is whether substantial evidence supports the agency decision. I want to circle back to the acquiescence finding. While the immigration judge did somewhat conflate the prison standards versus whether the gang specifically would harm him, it is important to note that when considering whether he would be in prison, the fact that the gang members may harm him, that was something the immigration judge acknowledged is a likelihood. But the acquiescence, that negligence, in fact, the immigration judge stated that the prison officials may have some negligence, as in they're not able to control the gangs, there's bad conditions, and a lack of funding, which directly goes to gang members having the ability to outweigh, say, public officials. The judge found that ultimately, petitioner had not demonstrated that this would be by the Guatemalan public officials or with their acquiescence. And while the- Right, but that's a conclusion, right? Acquiescence is a legal concept, and it's a conclusion. And I'm thinking about, I'm looking at this right now, this case, Scarlett v. Barr, and it's the Jamaican police officer who got on the wrong side of some bad actors and was facing various threats and having to move around, and he was making a cat claim. And the IJ and the agency basically said, no, government wasn't acquiescent. They let him transfer a couple times. And we said, no, the agency opinion first has to address what the legal responsibility that the Jamaican authorities had to protect a serving police officer threatened with gang violence. And then they have to analyze whether they were unable to fulfill this responsibility or unwilling to do so. That's the analysis that underlies this conclusion of, did they acquiesce? And it feels like that's the piece that's missing here. Well, Your Honor, I just want to note, unable and unwilling does not apply for cat protection. It's that acquiescence, whether the public official is going to acquiesce to the torture. Unable and unwilling is asylum withholding. I will point this court to Quintanilla Miha, which Judge Sullivan was on that panel, in that it discussed acquiescence findings specifically, noting that while there may be evidence of bad conditions or that the government of that home country may potentially acquiesce, that is not enough for substantial evidence to overturn and to remand it back. And that's what we have here. There are different views of the evidence. But overall, the record does not compel a contrary conclusion. The immigration judge and the board thoroughly reviewed it. The board specifically addressed this acquiescence finding both for mental health conditions and for if you'd be in prison with gang members. And therefore, the record does not compel a contrary conclusion. Thank you, Your Honors. Thank you very much, Ms. Groff. And now we'll go to Ms. Horne for two minutes of rebuttal. Thank you, Your Honors. So the core of this case is that my client is a victim of torture. And if he is returned to Guatemala, he will again be tortured by MS-13. You have to establish, of course, the acquiescence, right? I mean, the fact that MS-13 is gunning for him is not going to be enough, right? We do have to establish. And so it seemed to me that the IJ and the BIA concluded that the prison conditions include gang violence. And it seems like you're arguing there needs to be a separate consideration of gang violence motivated as retaliation to former gang members, as opposed to gang violence just generically in a prison. And I'm not sure why that distinction is necessary for the BIA. Your Honor, I think the distinction is necessary because the framework of this case just involves a different torturer. So the prison is a torturer in a prison. And it's gangs. And so it seems to me that you have to establish, your client has the burden of establishing that there is acquiescence by Guatemalan officials, prison officials, right? That's what we're really talking about. And so if the IJ found that there is no acquiescence in the gang violence taking place in prisons, why isn't that the end of the inquiry? Because I don't think the IJ or the BIA reasoned that way here, Your Honor. I think what the IJ and the BIA looked at was whether prison officials themselves would have a specific intent to harm BGS. So the way that Your Honor just framed it, I think, would have been the appropriate analysis, which is the gangs have a specific intent to harm him, and prison officials will acquiesce to that harm. But that is not the way that the BIA and the IJ reasoned here. Instead, they applied an inapplicable body of case law to a different situation. I see my time has expired, Your Honors. Thank you. Well, that was very helpful. Thank you both. We will reserve decision. And we'll move on.